Thank you, Your Honor. May it please the Court, David Leitz for the plaintiffs and appellants in this matter. This appeal arises from a November 25th, 2022 data breach case involving West Technology Group in which the personally identifiable information of approximately 86,000 employees, future employees, and former employees was impacted when cybercriminals infiltrated the network of West Technologies, were in the network unimpeded for approximately five days, and exfiltrated data out of the system. The district court dismissed this case pursuant to a motion to dismiss on Rule 12b.1, finding that the plaintiffs had not alleged injury in fact to satisfy the Article 3 injury in fact standing requirement. The district court committed clear error by so two reasons. One, because the plaintiffs in this case pled actual misuse of the data, which was an injury in fact standing alone to satisfy Article 3 standing. The other reason is that the plaintiffs made out a case for the imminent and impending risk of harm, which also qualifies as an injury under the case law and under Article 3 standing analysis. And what the district court did here is essentially collapse the Article 3 standing analysis into a single-factor test, basically finding that if the plaintiffs didn't allege actual fraud or identity theft arising from this data breach, that they didn't have standing. And that, Your Honors, is contrary to the super-value precedent of this court from 2017, that there isn't a single-factor test in the Eighth Circuit. There isn't a single-factor test in any of the Federal Circuits. And indeed, if you adopted a single-factor test, you'd effectively eviscerate imminent and impending as an alternative theory of standing. Because if you had actual misuse, if you had actual fraud or identity theft, you wouldn't need to plead imminent and impending risk of harm. You could basically just rest upon the fact that your plaintiffs have already suffered identity theft or fraud. Well, I'm not sure that's quite true. If you had misuse as to other persons, then you might not have a personal misuse yet. That's true. But you could satisfy the certainly impending requirement. That's true, Your Honor. And it doesn't collapse. It collapses in some measure, though, because, again, each plaintiff does need to satisfy the standing requirement individually, as this Court sort of pointed out in Super Value, where the Court went through the analysis and looked at each plaintiff and looked whether or not each plaintiff had a pled misuse. So, yes, for an imminent and impending analysis, it is correct that you don't need to allege actual misuse of the named plaintiffs. It just has to be misuse of some of the data set. And, indeed, that is pled here. And when we do go to a proper imminent and impending analysis, that qualifies. So my argument here is plainly stated that the Super Value case basically engages in an intensive fact-based inquiry into whether or not there is imminent and impending risk of harm pled by the plaintiffs. And in carefully parsing Super Value, what can be seen is that the Eighth Circuit has already sort of utilized what has now sort of grown up as this three-commonality or three-factor test that three of the federal circuits have articulated specifically. And those three factors or three commonalities are whether or not there's been any misuse of any portion of the data set, and this goes to the point that you were just raising, Chief Judge Colleton. Number two, whether or not there was cyber thieves involved in this or whether or not there was malicious actors who were targeting this data. And this is alleged in the complaint here as well. This isn't a stolen laptop case where there's some question about whether or not the cyber criminals were actually stealing a laptop for the value of the hardware. This is a case where the cyber criminals went into the system of West Technology and exfiltrated PII out of the system. Going back to the first element that you just mentioned, and that was, is it misuse, I think? Is that the way the case is used? And what was alleged here as far as, I guess it's actual misuse of the data. Is it simply that it was posted for sale? Is that misuse and have cases held that? Yes, Judge Cobes. So that's one form of misuse that is pled in the complaint at paragraphs six and seven, that a portion of this data set or some of the data that was exfiltrated from the defendant's system was posted on the dark web. Is there a case that says that is misuse, the posting without the purchasing and use of? Yes, Your Honor. So most notably, the Green Cooper versus Brinker case from the 11th Circuit explicitly talks about the posting on the dark web and talks about how the posting on the dark web is critical for the standing analysis and that it satisfies both the actual misuse for present kind of injury, in fact, and also satisfies the actual misuse for the imminent and pending analysis. What's the precise allegation about posting on the dark web? The way it's worded is important. The precise allegation, Your Honor, again. Are you referring to paragraph seven? Yeah. That says foreseeably comma. So in paragraph six, Your Honor, at the end, it says, at the end, for failing to provide adequate notice to plaintiffs and other class members that their information have been stolen by criminals and listed for sale on the dark web. That's not an allegation that it happened. That's an allegation that that's why they brought the suit. And then in paragraph seven, we go on, upon information and belief that, you know, the threat actors exfiltrated plaintiffs and class members' private information from the database and then listed this information for sale on the dark web. So that's just information and belief. Well, does that satisfy Iqbal and Twombly? At the pleading stage, it's just a naked assertion. Well, at the pleading stage, it does, Your Honor. So in Green Cooper, the 11th Circuit talked about how at the beginning of these data breach cases, virtually all the facts are sort of within the control and the ambit of the defendants. And the plaintiffs can only know what they can know from public research and from finding facts out in the wild, if you will. There's no requirement, there's no pleading requirement for Article III standing that we would need to have an insider to sort of get under the hood and tell us exactly about this dark web posting. So I don't know that there's an exception, though, to Iqbal and Twombly for information not known to the plaintiff. So the information and belief, the way that we're using it here is that it's based upon our pre-suit investigation and sort of finding some of this data set listed for sale on the dark web. So that's the information that we're found in. Are you saying that you've alleged that somebody in the plaintiff's group actually went on the dark web and found the data? No, that isn't alleged in the complaints. So the concern is whether you're saying every time there's a data breach, all you got to do is say on information and belief the information has been posted on the dark web and that's enough. You seem to be saying that, if I hear you right. That isn't what I'm saying. Okay, I thought you were saying, well, because we have no way to know, we can just allege on information and belief it's on the dark web and that's enough to show misuse. That wouldn't be how I would plead a case.  That wouldn't be what I would. What more do you have here than that? Well, there's nothing within the bounds of the complaint and for purposes of the record here, we're bound by what's in the complaint. And certainly the district court, you know, opened up the door to re-pleading this case, you know, and specifically said that I'm going dismiss this without prejudice and you can come back later on if you can allege fraud or misuse. I think that's an error by the district court that there would be this requirement that we would plead fraud or misuse on behalf of the plaintiffs. But the door is still open to re-plead. But there isn't anything more than that in the complaint. Well, I'm sorry. Understood. Go ahead. But we have another form. Hold on. Fraud or misuse, I mean, I thought you just said that to the extent that we're considering this three-factor test, that misuse is a component of that. And so the district court, I mean, that is an important element that you need to plead under either imminent injury or present injury, isn't it? And so, I mean, you're faulting the district court, I guess, for requiring that as the single thing you need to plead. But on the other hand, you're arguing you did plead it. So the issue with what the district court did and where the judge went wrong is that he narrowly construed actual misuse to be actual fraud or identity theft. And for the imminent and pending analysis, it can be a lower threshold of actual misuse. And that's what's pled here. So in addition to the dark web allegations, we have the allegations by two of the plaintiffs that they had an uptick of phishing, fraud-based spam emails, phone calls, and texts that came to them after the data breach happened. Is there any causation pled? Or is it simply the timing? At this stage of the game, it's just the temporal connection. But it's a low bar in terms of traceability at the pleading stage for standing purposes under the super value precedent. So we have the misuse. But we don't even necessarily need to plead any misuse if the court were to look to the Bonac precedent from the Second Circuit. So in Bonac, the court basically focused on the other two factors, which are that you had cyber criminals involved that perpetrated this threat by intention, or perpetrated this theft of the PII by intention, and that Social Security numbers were involved. And really, those are the linchpins. And really, I think the Social Security number involvement is what distinguishes this case from the outcome of super value. This is the case that this court in super value sort of presaged when it, in dicta, sort of said, well, more or less, we don't have Social Security numbers or driver's licenses or the type of information set involved in super value that could lead to identity theft down the road. You can't take somebody's credit card and backward engineer identity theft from a credit card. And so the outcome in super value, which the district court here focused on heavily, was with a stolen credit card, you're not going to win on an imminent and pending risk of harm injury theory when you don't have actual misuse, when you don't have somebody making fraudulent charges on the credit card. But this case is different. And if we look to the Second Circuit, where, again, the three commonalities are being employed, you didn't have allegations of any form of misuse in BONAC. And the Second Circuit still said, we've got enough here for the plaintiff to plead imminent and impending risk of harm for Article III standing purposes, just based upon the threat actors that were involved and the Social Security numbers. So you can have this three-factor analysis, this three commonality analysis, and it's a holistic balancing test. And they're really just considerations for the court to look to whether or not the plaintiff has essentially swung the doors of federal court open based upon the fairly low burden that the plaintiff has at the pleading stage. And of course, as this court just pointed out in a case that just came down a week or two ago, the burden shifts as the case goes on. But we're at the very outset, and it is still the no-displeasing jurisdiction with the plausibility standard of Iqbal and Twombly. But really, all we're talking about is whether or not the plaintiffs have made enough allegations for federal court to be available to them as a forum. And the traceability analysis, the court said in super value, is something that's really more properly in the context of a 12B6 motion, not so much in the standing analysis. So again, this isn't an expansion of what this court has said in the past, although it's a little, I have a little trepidation telling Judge Colleton what super value means since you were there. Well, I mean, it just wasn't decided as far as I can see, because this issue wasn't presented. Right. And the key distinction is, well, now we're presented with a social security number case, does that change the equation? And that's really for the court to decide whether or not it does. There's a couple other unanswered questions in the super value case and some of the footnotes about whether or not things like the diminution of value theory is injury, in fact, for Article III standing purposes. And this court in super value basically said, we're not going to talk about that because it didn't really get briefed and it's not really raised here. Well, it is raised here. And again, that would be an alternative basis for standing. But I don't think we need to go there. I think that this is pretty clear that the plaintiffs have pled actual misuse in the form of the dark web posting, which again, under Weisenberger from the District of Nebraska, so an Eighth Circuit District Court case, and the Eleventh Circuit's guidance from Green Cooper, could be the actual misuse, which would be an injury, in fact. Or if you go to this imminent and impending risk of harm theory, we've met the mark there as well because we've got threat actors involved, because we've got social security numbers involved, and because we have these allegations of misuse, the spam, you know, emails that were designed to fish additional information from the plaintiffs. I see my time is up other than rebuttal. Yes, Judge Bruner? You pled a claim for injunctive relief, right? Yes. Did you make any separate arguments about standing for that? No separate arguments for standing for the injunctive relief, other than to say that the information is still in the custody and control of the defendants, and there is no allegation that they, or no fact that they've changed their security practices, and therefore the plaintiff's data is still at risk because it's still under the control of the defendants. So that would be the injury or the hook for the injunctive relief going forward. Thank you, Your Honors. Very well. Thank you for your argument. Ms. Gomez, we'll hear from you. Good morning, Your Honors. May it please the Court. This case is about a data breach which has become all too common in today's society. We hear all the time about new breaches affecting government entities and private corporations alike. But in order to have a case and to sustain standing in federal court, a plaintiff, it is the plaintiff's burden to show a concrete and particularized actual or imminent injury, not a conjectural or hypothetical one. Concreteness means it has to actually exist. Particularized means it affects them in a personal way, and it has to be actual or imminent. If you look at the complaint at issue in this case, the only actual, specific allegation of personal harm is spam, email, text messages, and phone calls. There is no plausible link between those spam, emails, phone calls, and text messages, and the exposure of a social security number. That is a logical leap that has no basis in fact. The other types of harms are alleged privacy injuries, and I want to spend just a little bit of time on this concept of a privacy injury because TransUnion held that there are certain intangible harms that may be sufficiently concrete in order to establish standing, and one of those may be something like public disclosure of private facts. But if you look at the case law that's cited, you've got Davis, which is a Supreme Court case about government-compelled disclosure of personal finances to finance the campaign, and you also have a discussion of the restatement, which is on the public disclosure of private facts. Now, as American jurisprudence has evolved, private facts are things like family relationships, sexual relations, sexual orientation, things that might cause embarrassment, humiliation, and things of that sort if they were put out in the public sphere, and the harm stemming from those types of things is the publicity itself, that other people, a sufficient number of people know this personal fact about a person. But to equate those types of relationships to a social security number, which is a government-issued identification number, is not something that is analogous or recognized in American jurisprudence today, and respectfully, I would urge that other circuits that have adopted that interpretation are straying from firmly established principles that are behind public disclosure of private facts. Here, the district's lawyer says it's a public disclosure of private facts. Well, the amount of a campaign contribution doesn't seem to fit in the restatement privacy concept either, so there's a suggestion that analogous toward is broader. In that particular instance, Your Honor, that involved a government-compelled disclosure of information from a personal financial standpoint about what they would contribute to their campaign, and the Court, the Supreme Court has established a very substantial body of law that talks about when the government compels disclosure, we analyze that from a strict scrutiny perspective. In this case, no one compelled disclosure. But in TransUnion, they were just citing it for the purposes of standing analysis, and Davis had a standing analysis separate from the First Amendment strict scrutiny analysis. Yes, Your Honor. Okay. So doesn't that indicate that facts other than intimate personal material could trigger standing? It does. It suggests that facts other than intimate personal details could trigger standing, but I would suggest that Social Security numbers are not such a private fact that they ought to, once they are pled, automatically establish a bright-line rule that, if you get a notification letter saying your Social Security number may have been exposed, that you automatically establish standing because of invasion of privacy right. Otherwise, federal courts would be flooded and inundated with data breach cases that would survive the standing analysis merely because they plead a disclosure of the Social Security number. And doesn't disclosing the Social Security number substantially increase the risk of identity theft? In other words, you know, I think alluded to in super value, you can use that to then go out and open separate credit card accounts and things like that, unlike an address or a date of birth alone. You could, yes. I would concede that point. On the other side, I would also suggest that there are three factors at play that plaintiffs has articulated here in terms of, like, the type of information that is involved, the sensitivity, whether it was targeted, purposeful or malicious, and how it could be used. They plead that it was targeted, right? I would push back on that assertion that it was pled as targeted. If you look at the notice letter and the allegations, an unauthorized actor was in their system for a period of a few days. That unauthorized actor potentially took files which may have included Social Security numbers. So this is not a case, for example, like you have in other circuits where That's the complaint in the case that potentially took numbers? Or I'm just making sure I understood your argument here. Yes, Your Honor. Is that what the complaint says? Or is that what the notice from the defendant says? That's what the notice from the defendant says. And the inference that plaintiffs are suggesting is that that means that it was a targeted attack meant to obtain private information. That is a leap from the notice letter that is not supported by the notice letter. And here we're looking for facts that would plausibly support their right to relief. If you look at the complaint in this case, we have That seems like a pretty plausible inference, doesn't it? Somebody hacks into your system and is in there for two days taking stuff. Isn't that pretty plausible that that's a targeted attack? I would suggest that as a generous inference. And even if you took that, right, even if you took that as The other inference, what's the They could be looking for trade secret information. They could be looking for financial information of the corporation. We don't know why they were in the systems, except that they were in the systems. Certain files were taken and those files may have included personal information. What's missing here Is there any allegation that the information was publicized? Back to your question, back to your argument about disclosure of private information, the restatement talks about wide publication. And Davis involved, I think, wide publication of campaign data. Is there any allegation here that the information was publicized? There is not, neither as to the named plaintiffs themselves, nor to any other persons who were involved in this breach. Now, there are general and conclusory allegations on information and belief that this type of information is posted on the dark web. But those same allegations were at issue in SuperValue. Now, that was a payment card case. It was not a Social Security case. But in that case, and I'm reading directly from SuperValue, plaintiff pointed to the allegations that on information and belief, illicit websites were selling their card information to counterfeiters and fraudsters. And in that case, the Eighth Circuit concluded those allegations were speculative. They were not supported by any specific facts. They were just an assumption made from the fact that the data had been compromised. In that case, you had, I believe it was 16 plaintiffs who brought suit. Only one of them had standing. That was Mr. Holmes, because Mr. Holmes personally suffered a fraudulent charge on his credit card. And the Eighth Circuit was reluctant. This court was reluctant to allow 15 plaintiffs to piggyback their own standing on the misuse of one plaintiff, Mr. Holmes, in that case. And I would urge this court to follow the same line of reasoning. Here, the record is fairly clear. The plaintiffs have not suffered any form of identity theft, fraud, credit inquiries, or other types of accounts opened in their name. And I think that's very important, because as we've heard, Social Security numbers could be used. Social Security numbers are the types of information that one would use in order to do some of these things. But nothing has yet happened. In 15 months, in almost two years, nothing has happened. And the district court left open the door. It did not shut the door on plaintiffs. It said, if you experience actual instances of identity theft or fraud, you are welcome to come back to this court and seek redress for that injury. That has not happened. And imminence has to mean something. And I understand that we have certain tests to decide whether something or not is imminent. But we cannot stretch it farther than its logical conclusion. And if, for example, from my own personal life, if I am getting ready to go to dinner with my husband, and he says, when are you going to be ready? I say, I will be ready imminently. If I am still getting ready a year later, in what sense is that imminent? We have to have some sort of proximate, close, temporal relationship. And in this case, all plaintiffs have is, the data breach happened. And we believe on information and belief, this information was posted on the dark web. But it's of such a sensitive nature that nothing has happened, either to plaintiffs or to anyone else. I think that's very important in this case and something the court should be cognizant of. I'm going to touch briefly on the injuries that are alleged in this complaint, in terms of time and effort, and diminished value of personal information. Time and effort is established to be cognizable only if plaintiffs also allege a substantial risk of future identity theft. That has not happened in this case. I also want to touch on diminished value of personal information. And there is a split of authority as to whether this is sufficiently concrete and has a close relationship to harm traditionally recognized as providing a basis for a lawsuit in American courts. Even in this digital age, plaintiffs fail to plausibly allege how their social security number either appreciates or depreciates in value. This is not a car. This is not a home. This is not something that plaintiff would go out and sell to the highest bidder. So to try to establish standing only on a personal injury, diminished value of personal information, it's a bit too amorphous to establish standing in this case. And they have no analog for the type of injury that they allege here. Emotional distress by itself is not sufficient to confer standing unless it is coupled with a substantial risk of imminent harm. I also want to touch on the benefit of the bargain allegations. There was time spent in the briefing papers on benefit of the bargain allegations. And those are plainly absent from the complaint. Therefore, the district court was right in concluding that those were not an appropriate basis to not dismiss the case. And again, I really want to emphasize the spam messages because really that's the only concrete harm here that's alleged. And all of us in this room have a spam folder, I am sure, in our email boxes. All of us in this room get text messages that are unwanted, phone calls that are unwanted, and emails that are unwanted. Does that mean that all of us are data breach victims or likely to have been data breach victims? It does not. And it particularly does not when, in this case, there's no allegations that phone numbers or email addresses were involved in the compromised data set. And in my remaining few minutes, I just want to talk about the three-factor test that has been developed by other circuits. You've got McMorris, Clemens, and others. And they look at the types of data that's impacted, how it was impacted, and the potential, right? Is it sensitive Social Security-type information, or is it purchase history, right? There's a spectrum of information. Why is that the proper test? I don't believe it is, Your Honor. I actually believe it is a reformulation of another test developed by the Second Circuit in Clapper that was ultimately overturned at the Supreme Court. As you know, Clapper involved Federal surveillance, government surveillance of private attorneys and plaintiffs' group. And in that case, the Second Circuit, while it didn't outline Factor 1, 2, and 3, performed a similar analysis to try to figure out whether an independent third party was going to surveil the plaintiffs in that case. And in that case, again, they didn't say Factor 1, 2, and 3, but the things that they considered are, did the government already authorize the harmful contact? Did plaintiff's professions make it more likely that they would be targeted? And did empirical evidence support the likelihood of being targeted? In that case, 2081 out of 2082 surveillance application orders had been approved. And the Second Circuit said, based on these factors, we think that it is substantially likely that these plaintiffs will be harmed by government surveillance. So, applying that to this case, well, excuse me, let me back up for a moment. When that case was appealed to the Supreme Court, the Supreme Court overturned that objectively reasonable likelihood test. It said that is not, that does not comport with the imminence and substantial likelihood of harm that is required because the allegations of harm rested on a highly speculative fear, which relied on a highly attenuated chain of possibilities about what a third party had not yet done. And the Supreme Court in that case also stated that it was reluctant to endorse standing theories that require guesswork as to how independent decision makers will exercise their judgment. What the First, Second, and Third Circuits are now doing is they're trying to make educated guesses about what an independent third party will do based on similar factors as to what the Second Circuit used in Clapper. Unfortunately, in this case, that isn't appropriate. In addition, this complaint is heavy on conclusions and speculation but light on supporting facts. And just quickly, even if the Court were inclined to adopt that three-factor test, plaintiffs still fail that test they set for themselves. Here, number one, there are no factual, non-conclusory allegations that Peterson, Pulliam, or Maldine's information was targeted by a cybercriminal. Second, no facts, as opposed to legal conclusion or speculation, were pledged to support the inference that plaintiffs' or anyone else's data was misused. And even if someone else's data was misused, Article III does not give federal courts the power to order relief to any uninjured plaintiff, whether it's a clash action or not. And I want to focus in on Joint Appendix, page 26. Let me ask you, does it really matter if a particular plaintiff's information was targeted? I mean, isn't the purpose of that prong of the three-prong test to suggest that whoever is in the system is targeting that system for nefarious purposes? Not necessarily, wouldn't necessarily have to be related to the particular plaintiff, would it? If we follow those line of cases, I believe that is a broad and supported interpretation of those cases. Yes, Your Honor. I also want to point out here, in terms of the substantial risk, plaintiff alleges in Joint Appendix 26, paragraph 98, that according to experts, one out of four data breach notification recipients becomes a victim of identity fraud. Conversely, according to plaintiff's own statistic, that means plaintiffs in this case have a 75% chance, an overwhelming chance, of not being a data breach victim. For these reasons, I have to say, I have seen a lot of complaints that allege far more than is alleged here, alleging misuse either of plaintiff's specific information or some compromised data set. In super value, again, I would come back to this Court's prior jurisprudence, where 15 plaintiffs do state on information and belief that their information was posted on the dark web. This Court felt that those allegations were speculative and did not raise right to relief above that speculative level. On the letter that came from the company in this case, it is quoted as saying, the investigation revealed that the unauthorized party took some files from the corporate network, which may have included certain employee personal information. Is that all we know? Yes, Your Honor. Yes, Your Honor. The company knows that some files were taken, but it doesn't know which files? Often, that is the case, Your Honor. So, in terms of getting notification out to people and complying with certain— How would the company know that some files were taken without knowing which files? Typically, there is a forensic investigation that happens in most of these data breach cases, and it depends on the artifacts that are available to be examined. So, in many instances, companies are able to figure out, okay, well, they accessed this part of the network, or they had this part of the file tree, and they may have included some type of information that was sensitive, and they send notifications out. There's a tension between trying to figure out exactly what happened and trying to get notifications out on a timely basis. Well, there's a tension between—well, I don't understand how they could know that without knowing which files were taken. Maybe that's just beyond the record in this case, but that seems to be what the letter says. That is what the letter says, Your Honor, and with that, I appear to be out of time unless the court has additional questions for me. Thank you for your argument. We'll hear a rebuttal. Thank you, Your Honor. You're absolutely right, Your Honor. You can't know that files were taken without knowing what's in the files. Moreover, there's a specific number of persons who are identified as having information that defendants, again, sort of characterize as potentially being affected by this, but it's a specific number. They didn't send notice of this data breach to everybody and anybody. They sent it to 86,000 people specifically. They know very well what's in this, and— Well, they could have known that the person accessed those files without knowing that they were taken. But again, the letter specifically says that defendant knows that files were taken. That's actually unusual for a notice letter, that they actually make that admission in the first sentence of the second paragraph. And these notice letters are always crafted carefully by defense counsel to make it seem as ambiguous as possible. And really, this does a great disservice to the class of people who are affected by these data breaches because it is purposeful obfuscation of the actual facts that defendant knows based upon their forensic— I'm just not sure how far that gets you. If the file was taken— The file's taken, is what the letter says, and then the letters, and then it may have contained, and then the letters go on to say, and for you specifically, your name and Social Security number was affected. And that's what was alleged for Plaintiffs Malden and Peterson, that names and Social Security numbers were affected. So we know the defendants have sent these letters and— But we're still left with the question whether that's enough to be an injury. Well, and again, the main theory here that we are advancing is that we pled, and artfully pled, an imminent and impending risk of harm based upon sort of using this, you know, the three commonalities as sort of the analytical framework. And that the Court, when the Court looks at the three commonalities, will say, yeah, again, this isn't sort of a inadvertent— I hear you saying, no, really, there are only two commonalities. You want to knock out the second one and say that— No, I'm sticking with three, Your Honor. Well, you're sticking with three, and you're citing cases that say you only need two. There is one case, the Second Circuit— Well, that's your main case. Well, we certainly wouldn't mind if this Court went along with Bonac. We think Bonac is— If you need all three, then don't you lose? Because you have no evidence of misuse. Other than your dark web allegation, which— And the spam allegations. We have the misuse allegations that there is part of the data set— But what about the argument that there's a disconnect with the spam allegations because you allege stolen Social Security numbers, and then you're claiming you got too many emails? It doesn't match up. So again, it is a simple matter for anybody to go out in the wild and find, with a name and Social Security number, the corresponding emails and phone numbers. So there is a logical connection to be able to do that, and courts have found this. And we've cited decisions where basically the courts have found that it isn't required that is an exact match between the data set that was stolen and that which was misused. The D.C. Circuit, in the Atiyah's case, basically said that and said, we don't even know if Social Security numbers were actually impacted, but we're still going to find imminent and impending risk of harm. So it isn't required that we actually show that. I saw you perk up about this timeline. I want to say the timeline is sort of frozen here. It's a complete, like, mischaracterization to say nothing's happened in two years. We haven't alleged yet what has happened from the time that the briefings were sort of set and the time that the amended complaint was filed. I see my time is up. May I finish my thought? We haven't had the opportunity to allege what may have happened after that point. And so when they say— Well, if you have something good, why don't you amend? Didn't the judge invite you to do that? Not until the dismissal was filed. And then you have to make a strategic decision. Do you run right back into court and refile in federal court? Do you go to state court? Where do you go with your allegations at that point? So the pendency of this appeal freezes the record. And freeze it? You could file a new complaint? With other plaintiffs. I don't understand. I think procedurally, our understanding would be that with these plaintiffs, since we are appealing the decision and we believe that the existing case already should proceed and that we establish standing, that we don't file a second lawsuit that comes behind this appeal. That's a strategic decision. But I don't know if there's anything— I thought you were saying the rules of procedure somehow prevent you from— My understanding— Filing a solid complaint while you're trying to litigate a questionable one. My understanding is that when you file the appeal, it divests the district court of jurisdiction over the case. And the court of appeals has jurisdiction. And therefore, you can't start monkeying with the record at the district court level. I see. Okay. Thank you very much. Oh, I'm sorry. Thank you for your argument.